UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

JOHN ROBERT M. WIREMAN,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of the
Social Security Administration,

    Defendant.

CAUSE NO.: 4:17-CV-17-TLS-JPK

**OPINION AND ORDER**

Plaintiff John Robert M. Wireman seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income. Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating his pseudoseizure disorder. For the reasons set forth below, the Court finds that substantial evidence does not support the ALJ's decision and remands for further review of Plaintiff's pseudoseizures.

**PROCEDURAL BACKGROUND**

On August 9, 2012, Plaintiff filed an application for supplemental security income, alleging disability beginning in March 2009. AR 71, 72, ECF No. 5. The claim was denied initially and on reconsideration. *Id*. 44, 46, 55. Plaintiff requested a hearing, which was held before the ALJ on June 23, 2015. *Id*. 20, 48–50, 56. On July 31, 2015, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* 20–33. On February 23, 2017, Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision and remand for further proceedings. Plaintiff filed an opening brief [ECF No. 15], and the Commissioner filed a response brief [ECF No. 19]. Plaintiff has not filed a reply brief, and the time to do so has passed.

## THE ALJ'S DECISION

For purposes of supplemental security income, a claimant is "disabled" if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 9, 2012, the application date. AR 22.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of asthma, a pseudoseizure disorder, borderline intellectual functioning with a history of learning disorder, and a bipolar disorder. AR 22. The ALJ found that Plaintiff's right knee impairment was considered non-medically determinable. *Id.*

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." *Id.* § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled

2

without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 3.03 (Asthma), 11.02 (Convulsive Epilepsy), 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.07 (Somatoform Disorders). AR 22.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch and crawl; but he can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extremes of heat and cold; humidity; breathing irritants, such as fumes, odors, dusts and gases; and all exposure to hazards, such as dangerous moving machinery, and unprotected heights. The claimant is further limited to simple, routine, repetitive tasks with few workplace changes, and no interaction with the public. Additionally, he requires a flexible pace; in other words, no production pace jobs or assembly lines, where the piece is dependent on the prior piece. However, he could meet a daily quota or goal.

AR 24–25.

After assessing the RFC, the ALJ moves to step four and determines whether the claimant can do his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ noted that Plaintiff has no past relevant work under 20 C.F.R. § 416.965. AR 31.

3

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of bench assembler, electronics worker, and production assembler. AR 32. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

The Plaintiff sought review of the ALJ's decision by the Appeals Council. AR 14–15. The Appeals Council subsequently denied review, *see* AR 7–10, making the ALJ's decision the final decision of the Commissioner. *See Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478

F.3d 836, 841 (7th Cir. 2007) (same). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred by not properly considering his pseudoseizures under Listings 11.02 and 11.03 at step three of the sequential analysis and by not

5

considering the functional limitations of his pseudoseizures in formulating his RFC. The Commissioner responds that the ALJ's decision is supported by substantial evidence. Although the ALJ accurately reviewed the medical evidence of record and recognized that Plaintiff's pseudoseizures are a severe impairment with the potential to be disabling, the ALJ did not explain how the frequency and nature of Plaintiff's pseudoseizures would affect Plaintiff's ability to sustain work-related activities on a regular and continuing basis. Thus, remand is required for the ALJ to conduct a proper analysis of Plaintiff's pseudoseizures.

### A.     Step 3 Listings

Plaintiff first argues that the ALJ erred at step three of the sequential analysis by failing to evaluate his seizure disorder under Listings 11.02 for convulsive epilepsy and 11.03 for non-convulsive epilepsy. Plaintiff has the burden of showing that his impairments meet a listing. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)). The Seventh Circuit Court of Appeals has declined to hold that an "ALJ's failure to explicitly refer to the listing alone necessitates reversal and remand." *Rice v. Barnhart*, 384 F.3d 363, 369–70 (7th Cir. 2004) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Yet, "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583 (citing cases); *see also Minnick v. Colvin*, 775 F.3d 929, 935–36 (7th Cir. 2015) (finding that the ALJ's perfunctory analysis coupled with significant favorable evidence required remand).

At step two, the ALJ found that Plaintiff has the severe impairment of a pseudoseizure disorder. AR 22. "Pseudoseizures, also known as psychogenic seizures, nonepileptic seizures, and paraoxysmal nonepileptic episodes (PNES), resemble epileptic seizures but are not

6

attributable to epilepsy or abnormal electric activity in the brain. No single cause of psychogenic seizures has been identified, but they are typically attributed to an underlying psychological disturbance." *Boiles v. Barnhart*, 395 F.3d 421, 422 (7th Cir. 2005) (citing Ronald P. Lesser, *Treatment and Outcome of Psychogenic Nonepileptic Seizures*, Epilepsy Currents, Nov. 2003, at 198). Plaintiff does not contest this finding.

At step three, the ALJ noted that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination." AR 22. The ALJ then identified the listings he considered in making the finding, which were 3.03 (Asthma), 11.02 (Convulsive Epilepsy), 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.07 (Somatoform Disorders). *Id*. Plaintiff is correct that the ALJ provided no substantive discussion of Listing 11.02 at step three and that the ALJ did not mention Listing 11.03 for non-convulsive epilepsy. *See* AR 22–24. The Commissioner is also correct that, in reading the decision as a whole, the ALJ thoroughly discussed the evidence of Plaintiff's seizures in the RFC analysis. *See* AR 25–26.

However, it is unnecessary for the Court to review the ALJ's listing analysis because remand is otherwise required for reconsideration of the RFC based on pseudoseizures (as set forth in the next section). In addition, the listings applicable to epilepsy and pseudoseizures were revised effective January17, 2017. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, Revised Medical Criteria for Evaluating Mental Disorders (Sept. 26, 2016) (effective January 17, 2017). With the revision, Listing 11.02 is now titled "Epilepsy," and Listing 11.03 is "reserved." *See* 20 C.F.R. Part 404, Subpt. P, App. §§ 11.02, 11.03 (2019). And, § 11.00(H) clarifies: "We do *not* count psychogenic nonepileptic seizures or pseudoseizures under 11.02. We evaluate these

7

seizures under the mental disorders body system, 12.00." 20 C.F.R. Part 404, Subpt. P, App. § 11.00.H.4.e (11.00 Neurological Disorders) (emphasis added).[1]

Accordingly, because remand is required on other grounds, the ALJ will have an opportunity to review whether Plaintiff meets or equals a listing under the revised regulations.

**B.     Residual Functional Capacity**

Plaintiff seeks remand for proper consideration of his pseudoseizures in determining his RFC. Plaintiff argues that the ALJ did not consider his mental health issues in combination with his pseudoseizure disorder, that the ALJ did not explain how Plaintiff can meet the minimum mental standards to sustain unskilled work in light of the frequency of his seizures in relation to stress, that the ALJ should have sought a medical expert to determine the effects of Plaintiff's pseudoseizures on his RFC, and that the mental limitations in the RFC are inadequate to accommodate the frequency and effect of his seizures.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a

---

[1] The Court recognizes that the ALJ found that Plaintiff does not meet Listing 12.07 for somatoform disorders, AR 23–24, and that Plaintiff has not appealed that finding. However, Listing 12.07 was also revised.

8

function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The ALJ must "also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

First, the Court recognizes that the ALJ conducted a thorough analysis of the medical evidence related to Plaintiff's pseudoseizure disorder. *See* AR 25–26. A brief review of this evidence will provide context for the decision to remand. The ALJ noted that Plaintiff had sought emergency treatment multiple times for seizure activity but that "epileptic seizure activity has not been substantiated by diagnostic testing" as neither electroencephalogram (EEG) testing from April 2011 nor 72-hour inpatient video EEG from December 2014 produced results consistent with an underlying epilepsy disorder. AR 25 (citing AR 268–93, AR 399–405, AR 471–85). The ALJ noted that, while Plaintiff demonstrated seven stereotypical events of loss of responsiveness and shaking convulsions during his admission for the inpatient video EEG in 2011, the events were non-epileptic in nature and consistent with psychogenic events. *Id*. 26 (citing AR 405). Likewise, the ALJ commented that, although the Plaintiff reported experiencing

9

four events during the 72-hour ambulatory EEG performed in December 2014, the episodes did not show epileptiform activity. *Id*. (citing 471–85, 486–98).

The ALJ recognized that Plaintiff had been under the care of neurologists since fall 2010, when he reported a history of seizures and blackouts, and that Dr. Cahn wrote that the events were "extremely atypical" for epilepsy and most likely nonepileptic, psychogenic events, especially when factoring in Plaintiff's history of abuse. *Id*. The ALJ further recognized that Plaintiff reported fewer symptoms to Dr. Cahn once Plaintiff started on medication and that progress notes indicated he was tolerating medication well. *Id.* The ALJ discussed Dr. Cahn's records from April 2012 in which Plaintiff reported improvement with only "mild seizures." *Id*. The ALJ noted that Dr. Cahn wrote that Plaintiff was working with psychological counseling and stress management and showing improvement. Again, the ALJ noted that prescribed medications were helping Plaintiff's mood and anxiety. *Id*.

The ALJ reviewed neurologist Dr. Patrick Reibold's August 2012 treatment note that Plaintiff continued to experience spells that his wife described as shaking all over, sometimes with loss of consciousness, lasting 10 to 15 minutes at a time. *Id*. (citing AR 483). The ALJ recognized that, when Plaintiff returned to Dr. Reibold in September 2013, he reported that he continued to experience spells but also that he had run out of his prescription medication Tegretol and that Dr. Reibold commented that Plaintiff's "Tegretol level was 0" when he was seen in the emergency room. *Id*. (citing AR 482). The ALJ noted Dr. Reibold's impression of a seizure disorder but also his noted concern for possible pseudoseizures. *Id*. (same). Finally, the ALJ noted the treatment records from November 2014, including Dr. Reibold's notation that

10

Plaintiff had missed his last several appointments and was a "frequent visitor" to the emergency room and that Plaintiff's "Dilantin level was subtherapeutic." *Id.* (citing 473).

Second, the Court recognizes that the ALJ accounted for certain aspects of Plaintiff's pseudoseizures in the RFC. For example, consultative physician Dr. Sands opined that Plaintiff could work at all levels of physical exertion. *See* AR 440–47. After weighing this opinion, the ALJ assessed a more deferential physical RFC to account for Plaintiff's seizures: "[T]he undersigned finds the claimant's history of pseudoseizures would preclude lifting and/or carrying greater than 20 pounds, and that due to these conditions, as well as the claimant's asthma, additional postural and environmental limitations in the residual functional capacity are appropriate." AR 29. As for the mental RFC, the ALJ accommodated Plaintiff's reaction to stress based on findings made at step three that Plaintiff "has alleged problems with his short-term memory, and difficulty dealing with stress. In fact, progress notes have suggested that the claimant's pseudoseizures can be triggered by stress." *Id*. 24. Thus, the ALJ incorporated restrictions to "simple, routine, repetitive tasks with few workplace changes," "no interaction with the public," and "a flexible pace, not production pace jobs or assembly lines where the piece is dependent on the prior piece." *Id*. 25.

However, remand is required because the RFC determination does not explain how the ALJ accounted for the frequency and effect of Plaintiff's seizures on Plaintiff's ability to sustain work. *See, e.g.*, *Boiles*, 395 F.3d at 427 (discussing the need to establish the frequency of pseudoseizures at step three); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (finding that the ALJ erred in discrediting the claimant's reports of the frequency of pseudoseizures); *Desiree B. v. Saul*, No. 18-CV-8129, 2019 WL 6130814, at *5 (N.D. Ill. Nov. 19, 2019)

11

(remanding for a new RFC assessment to allow the ALJ to evaluate the "limits in functioning or performing basic work activities" due to a severe seizure disorder with pseudoseizure episodes).

Over the years, the records of Plaintiff's treating neurologists show that Plaintiff reported the frequency of seizures such as four episodes in a row on March 16, 2011, with the seizures occurring daily, AR 282 (3/23/2011); seizures occurring less often but two to three episodes on May 15, 2011, AR 284 (5/16/2011); three to four episodes in the prior month, AR 286 (7/13/2011); seizures are less frequent but remain unresolved, AR 290 (4/12/2012); continuing to have spells that involve shaking all over, sometimes associated with alteration in consciousness, lasting ten to fifteen minutes, AR 292–93 (8/13/2012); continuing to have spells, AR 482 (9/6/2013); two to three spells a day, AR 473 (11/6/2014).

In addition, Plaintiff's self-reported seizure journal, which is for the periods of February 2014 to February 2015 and April 2015 to June 2015, records almost daily seizures. AR 185–202, 262–64. The ALJ's only remark regarding the journal is that the "seizure journal, kept by the claimant's wife, reflecting a high number of seizures, has not been substantiated by the objective evidence." AR 30. In making this comment, it appears that the "ALJ failed to consider that psychogenic seizures do not show up on objective testing such as an EEG, CT, or MRI." *Amy S. v. Saul*, No. 2:18-CV-331, 2019 WL 7288894, at *5 (N.D. Ind. Dec. 30, 2019) (citing *Boiles*, 395 F.3d at 424). Also, in the absence of an independent reason for disbelieving the reports, the ALJ erred by discrediting the seizure journal simply because the contents were self-reported and/or reported by Plaintiff's spouse. *See Barnett*, 381 F.3d at 670 (finding that the ALJ erred in discrediting the claimant's reports of the frequency of pseudoseizures on the basis that they were

12

self-reported and in discrediting the spouse's corroboration given that the ALJ did not appear to have an independent reason to disbelieve the spouse).

Finally, as argued by Plaintiff, the supplemental records sent to the Appeals Council show sixteen visits to Franciscan St. Elizabeth Hospitals for treatment of seizures between August 25, 2013, and June 23, 2015. Pl. Br. 9 (citing AR 543, 548, 569, 588, 596, 599, 612, 631, 653, 686, 694, 709, 726, 739, 756, 776, 791, 810, 837). Whether these emergency room records support a finding of seizures or pseudoseizures, the records nevertheless support the frequency of episodes asserted by Plaintiff.

The Court agrees with Plaintiff that there is a gap in the medical records addressing the psychogenic nature of Plaintiff's pseudoseizures, their frequency, and the combined effect with his other mental impairments in a work environment. The ALJ gave great to weight to Dr. Lovko's December 2012 non-examining consultative opinion. AR 29. However, it is not clear that Dr. Lovko reviewed treatment records in which the neurologists diagnosed pseudoseizure disorder. In the functional capacity assessment portion of the mental RFC assessment form, Dr. Lovko noted that Plaintiff alleged impairments of "seizures" and "bipolar [disorder]." AR 450. There is no indication that Dr. Lovko considered whether Plaintiff had a pseudoseizure disorder and how that impairment would affect his ability to work. Notably, Dr. Lovko only considered Listings 12.02 (organic mental disorders) and 12.04 (affective disorders), but not 12.07 for somatoform disorders. AR 448. There are no mental health treatment records after 2012, yet Plaintiff's neurologist diagnosed pseudoseizures during that time period. Dr. Lovko may have viewed Plaintiff's seizure condition differently had he been aware of the diagnosis of possible pseudoseizures or a psychogenic basis for the seizures. *See Stage v. Colvin*, 812 F.3d 1121, 1125

13

(7th Cir. 2016) (remanding because new medical findings could reasonably change the reviewing physician's opinion). On remand, the ALJ will have an opportunity to obtain updated medical opinions and/or call a medical expert, if necessary. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Remand is required because the ALJ's RFC analysis does not create a logical bridge between the evidence that Plaintiff's pseudoseizures occur with a certain frequency and the finding that Plaintiff can sustain basic work activities on an ongoing basis.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 15], REVERSES the decision of the Commissioner of the Social Security Administration, and REMANDS this matter further proceedings consistent with this Opinion.

SO ORDERED on March 5, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT